## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| PLAINTIFF, | * | |
| | * | |
| v. | * | CASE NO.  2:07-CR-00145-MHT |
| | * | |
| MARTELL WATSON | * | |
| | * | |
| | * | |
| DEFENDANT. | * | |

### DEFENDANT'S SUPPLEMENT TO MOTION TO SUPPRESS

Comes now Martell Watson in the above-styled cause, through undersigned counsel and supplements his previous motion in limine, regarded by this Honorable Court as a Motion to Suppress, and supplements with the following:

### FACTUAL SUPPLEMENT

In December of 2003, Martell Watson worked in the "event planning/promotion" division of the Carmichael Center in Montgomery, Alabama. On December 23, 2003, Montgomery Police Officer Brian Fulton stopped Martell Watson for an alleged traffic violation while DEA agents conducted surveillance on Watson as he drove from his home.  Agents David DeJohn and Devin Whittle approached Watson during the stop. According to Watson, Officer Fulton stopped Watson for failing to wear a seat belt while driving. Shortly thereafter, the agents confiscated the automobile he drove along with Watson's cellular phone, phone number 334-221-8898. The automobile he drove that day was a red Pontiac Grand Am registered to Sherri Pettis, another employee at the Carmichael Center.

### ARGUMENT SUPPLEMENT

**1.      The Detention of Watson was Unreasonable Under the Fourth Amendment**

The traffic stop became unreasonable once it went beyond the purpose of the stop. Code of Alabama *1975* §32-5B-8 (c )  states that a law enforcement officer may not search a motor vehicle, its content, or driver for a violation of that section (The Alabama Safety Belt Act of 1991). Watson

claims that Officer Burton stopped him for a seat belt infraction. Officer Burton assisted agents DeJohn and Whittle by stopping Watson, and shortly thereafter seized the phone. Any questioning, search, delay or seizure is unreasonable because Watson gave no articulable reason for the officers to detain him beyond the traffic violation.

"Once the purposes of the initial traffic stop were completed the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *U.S. v. Holloman*, 113 F.3d 192 (11th Cir. 1997) quoting *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995). The Alabama Safety Belt Act of 1991 makes clear that its purpose is merely to enforce that drivers are wearing seatbelts with no further intrusions. Once an officer gives a driver a citation, the purpose of the stop is completed unless something occurs during that stop to justify further detention. Watson's detention while DEA agents questioned him gave no rise to any reasonable or articulable suspicion of criminal activity. Without additional reasonable suspicion based on facts and circumstances arising during the traffic stop, the detention, although temporary, must cease at the conclusion of the stop's initial purpose.

### 2. Watson possessed an Expectation of Privacy in the red Grand Am

The fact that Watson did not own the car is irrelevant in the determination that he had an expectation of privacy in the contents of that car. In *U.S. v. Miller*, 821 F.2d 546 (11th Cir. 1987), the Court held that a person in legal possession of a car belonging to someone else has a legal expectation of privacy in that car, even when the permission to use the car is only alleged by the defendant.

Here, Watson drove a car in the name of a fellow employee of the Carmichael Center, Sherri Pettis. Although the car was registered to Pettis, Watson contended the vehicle was a "company car" (belonging to the Carmichael Center). Pettis acknowledges that she did not purchase the car. Pettis further told the DEA agents that Leon Carmichael collected it as a debt from a separate party. Watson did not claim to own this car but only to have permission to use it and therefore has standing to challenge the stop, search, and seizure and further possessed an expectation of privacy in the

contents of the car.

### 3. Even if the Phone was in Plain View, the Exception Does Not Apply

A search is generally reasonable under the Fourth Amendment when it is supported by a warrant or falls within an established exception to the warrant requirement. Although plain view is an established exception, its use in a warrantless seizure must meet two requirements: 1) the officer is lawfully located where he can see the item in plain view and had a lawful right of access to the item; and 2) the incriminating nature of the item is immediately apparent. *United States v. Smith*, 459 F.3d 1276 (11th Cir. 2006). The DEA agents had no lawful right of access to Watson's phone without a warrant and a phone is not capable of rendering an incriminating nature so immediately apparent as to justify its seizure. As such, plain view cannot apply and the illegal seizure of the cellular phone should be suppressed.

WHEREFORE, PREMISES CONSIDERED, the Defendant supplements the previously entered Motion in Limine, designated by this Honorable Court as a Motion to Suppress.

Respectfully submitted,

> s/Susan G.  James
> SUSAN G.  JAMES
> Attorney at Law
> 600 South McDonough Street
> Montgomery, Alabama 36104
> Phone: (334) 269-3330
> Fax: (334) 834-0353
> E-mail: sgjamesandassoc@aol.com
> Bar No: ASB7956J64S

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

A. Clark Morris
Assistant United States Attorney
P.O. Box 197
Montgomery, AL 36101

Respectfully submitted,


s/Susan G.  James
SUSAN G.  JAMES
Attorney at Law
600 South McDonough Street
Montgomery, Alabama 36104
Phone: (334) 269-3330
Fax: (334) 834-0353
E-mail: sgjamesandassoc@aol.com
Bar No: ASB-7956-J64S