IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:07-CR-145-MHT |
| v. | ) | |
| | ) | |
| MARTELL WATSON | ) | |

**RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

**COMES NOW** the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its response to the Defendant's Motion to Suppress as follows:

**FACTS**

On December 23, 2003, DEA Special Agent Devin Whittle and Task Force Agent David DeJohn were surveilling Martell Watson. Such surveillance began as a result of information, Agent Whittle and Agent DeJohn obtained regarding Watson's involvement in a marijuana trafficking organization lead by Leon Carmichael[1]. Agents interviewed Patrick Denton on November 16, 2003 and on December 18, 2003. During those interviews, Patrick Denton told agents that Watson, Carmichael's brother-in-law, was selling marijuana for Carmichael. Denton had personally taken marijuana to Watson for him to sell.

Agents also knew that Watson drove a red Pontiac Grand Am that was registered to Sherri Pettis. On December 16, 2003, Agent Whittle and Agent DeJohn interviewed

---

[1] Leon Carmichael was convicted in June of 2005 of conspiracy to possess with the intent to distribute 7000 pounds of marijuana and conspiracy to money launder. Carmichael was subsequently sentenced to 40 years incarceration.

1

Pettis. During the interview, Pettis told agents that Watson was presently driving this vehicle, but she wanted the car returned to her.

On December 16, 2003, agents also interviewed Marty Blane. Blane told the agents that he purchased several cellular telephones for Leon Carmichael. Blane explained he was the subscriber on the purchased phones and that the numbers on two of those cellular telephones were 221-8899 and 221-8898. Blane also stated that 221-8899 was being used by William Bolding and that 221-8898 was being used by Carmichael's brother-in-law, who Blane knew only as Martell. Blane further told agents that he did not want Bolding and Watson using his phones any longer.

Agent Whittle issued an administrative subpoena to T-Mobile for telephone records for 221-8899 and 221-8898. On December 15, 2003, Agent Whittle received the subpoenaed information. The T-Mobile records confirmed that 221-8898 and 221-8899 were subscribed to by Marty Blane. The records also revealed that on November 16-17, 2003, Watson (using telephone number 221-8898), Bolding (using telephone number 221-8899), Carmichael and Pat Denton called each other numerous times.[2]

Further, on December 16, 2003, agents completed a computer search through the Law Enforcement Tactical System (otherwise known as LETS) of Martell Watson's

---

[2] These phone calls are significant because on November 16, 2003, William Bolding transported over 500 pounds of marijuana to Montgomery. According to Freddie Williams, Martell Watson and two other individuals brought the marijuana to Williams' house for storage. Pat Denton and Freddie Williams were to break down the marijuana into smaller amounts on November 17, 2003. All of this was done at the direction of Leon Carmichael.

record. Such search indicated that Watson had a suspended driver's license.[3]

During the surveillance on December 23, 2003, agents contacted the Montgomery Police Department for assistance. Officer Brian Fulton conducted a traffic stop of Watson for failure to wear a seatbelt while driving[4]. During the stop, Agent DeJohn and Agent Whittle came upon Watson and Officer Fulton and identified themselves as federal agents. Officer Fulton ran a computer check of Watson and determined that Watson was driving with a suspended license.[5] Agent DeJohn and Agent Whittle then asked Watson who owned the car he was driving. Watson stated that it was a company vehicle, but that it was registered to Sherri Pettis. Watson further stated that he did not know if Pettis knew that he was driving her vehicle. Agents asked Watson for Pettis' phone number and Watson provided her cell phone number. Agent DeJohn called Pettis and asked her if she wanted him to return the red Pontiac Grand Am to her.[6] Pettis replied yes.

At this point, Agents asked Watson if he had any personal effects in the vehicle.

---

[3] Upon interviewing Agent Whittle and Agent DeJohn in preparation for this response, it became evident that neither agent is sure if prior to December 23, 2003, they were aware that Martell Watson had a suspended license. Even if, prior to December 23, 2003, the agents were unaware that Watson was driving on a suspended license, they became aware by Officer Fulton at the scene of the traffic violation.

[4] While it is undisputed that Watson was stopped for failing to wear a seatbelt, no traffic citation was issued for such violation.

[5] Officer Fulton did not cite Watson for driving with a suspended license.

[6] While Sherri Pettis had previously informed agents that she wanted to take possession of the Grand Am, on December 23, 2003, agents did not want to reveal to Watson that Pettis was cooperating with law enforcement. Thus, they pretended that they needed to call Pettis to ask her if she wanted the vehicle.

Watson replied that he had a cellular phone.  Watson then retrieved the phone from the car.  Agent DeJohn then asked Watson if he could see the phone.  Watson handed the cellular phone to Agent DeJohn.  The agents then asked Watson the phone number for the cellular phone.  Watson replied that it was (334) 221-8898.  Agents knew this number was registered to Marty Blane from the interview with Blane.  Agents then seized the phone.

## ARGUMENT

**A.   AGENTS DID NOT OBTAIN THE SEIZED CELLULAR PHONE BY SEARCHING THE PONTIAC GRAND AM DRIVEN BY WATSON**

Watson's motion to suppress is premised on an unlawful search of the red Pontiac Grand Am and the subsequent seizure of the cellular telephone located inside of the vehicle.  However, it is important to note, agents never searched the vehicle.  Watson, not law enforcement, removed the cellular telephone from the vehicle.  The seizure of the cellular telephone was not the result of any search.  Agents never opened a door, window or trunk of the vehicle until after the telephone was seized.

**B.   WATSON HAS NO STANDING TO CONTEST SEIZURE OF THE CELLULAR TELEPHONE**

While the government concedes that Watson has standing to contest any search of the Pontiac Grand Am, the government does not agree that Watson has standing to contest the seizure of the cellular telephone.  Watson must establish a subjective and an objective expectation of privacy in the cellular phone in order to succeed.  Katz v. United

States, 389 U.S. 347 (1967)  The defendant bears the burden of proving a legitimate expectation of privacy in the areas searched.  Rawlings v. Kentucky, 448 U.S. 98 (1980); United States v. Cooper, 133 F.3d 1394 (11th Cir. 1998).  While on December 23, 2003, Watson acted as if the cellular phone was his personal phone, the government expects that Watson will now maintain that he did not regularly use this phone.  If Watson borrowed this phone and only used it sporadically, then he has no expectation of privacy in the phone.

Further, Watson contests the seizure of the phone not the search of the phone.  The defendant must have a reasonable expectation of privacy in the place searched, not the things seized to establish standing.  United States v. Salvucci, 448 U.S. 83 (1980).  Because Watson is asserting a expectation of privacy in the thing seized, not the place searched, his suppression motion is without merit.

## C.     WATSON WAS NOT UNLAWFULLY DETAINED AFTER COMPLETION OF A TRAFFIC CITATION

It is undisputed that Watson was stopped by the police for failure to wear a seat belt while driving.[7]   Watson now contends that once the seatbelt citation was issued, any further detention is unreasonable.  See, U.S. v. Hernandez, 418 F.3d 1206 (2005)(unreasonable extensions of duration of detention, not scope of conversation, can

---

[7] While Watson does not claim the traffic stop was pretext, if such argument becomes an issue at the suppression hearing, the government cites Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769 (1996)(Temporary detention of a motorist upon probable cause to believe that he has violated the traffic laws does not violate the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist absent some additional law enforcement objective).

render detention unreasonable).  However, while running the usual computer checks, Officer Fulton discovered that Watson's driver's license was suspended.  Because it is illegal to drive with a suspended license in the State of Alabama, the agents could not allow Watson to drive the car away from the scene.  Ala.Code 1975 § 32-6-19(a)(1). Upon finishing the necessary checks for Watson's traffic violation, Watson was free to leave the scene, but not free to drive away in the Pontiac Grand Am.

Because Watson could not drive the Grand Am, Agent DeJohn called Pettis, the documented owner of the car, to confirm that she wanted the car returned to her.  At that point, the agents asked Watson about any personal items in the car.  Watson responded that he had a cellular telephone.  Watson then retrieved the phone out of the car.  After learning the cellular phone number, Agents realized that the phone in Watson's possession was the phone subscribed to by Marty Blane and seized Blane's phone. Any time Watson spent at the scene after the traffic violation investigation was complete was only to obtain his belongings from the vehicle and to arrange that the vehicle be returned to its registered owner.  Clearly, Watson's detention was not unreasonable for Fourth Amendment purposes.

## **CONCLUSION**

Because agents never searched Watson's vehicle, because Watson has no standing to contest the seizure of the cellular phone and because Watson was not unlawfully detained after completion of a traffic citation, Watson's motion to suppress should be denied.

Respectfully submitted, this the 4th day of January, 2008.

                          LEURA G. CANARY
                          UNITED STATES ATTORNEY

                          /s/ A. Clark Morris
                          A. CLARK MORRIS
                          Assistant United States Attorney
                          131 Clayton Street
                          Montgomery, Alabama 36104
                          Telephone: (334) 223-7280
                          Fax: (334) 223-7135
                          E-mail: clark.morris@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:07-CR-145-MHT |
| v. | ) | |
| | ) | |
| MARTELL WATSON | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Susan James.

Respectfully submitted,

LEURA G. CANARY
UNITED STATES ATTORNEY

/s/ A. Clark Morris
A. CLARK MORRIS
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Fax: (334) 223-7135
E-mail: clark.morris@usdoj.gov