IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| PLAINTIFF, | * |
| | * |
| v. | * CASE NO. 2:07-CR-00145-MHT |
| | * |
| MARTELL WATSON | * |
| | * |
| | * |
| DEFENDANT. | * |

## SUPPLEMENT TO MOTION TO SUPPRESS

Comes now Martell Watson in the above-styled cause, through undersigned counsel and supplements his previous Motion to Suppress, as instructed by this Honorable Court, and supplements with the following:

### FACTUAL SUPPLEMENT

On January 9, 2008, this Honorable Court conducted the hearing on this motion. At the hearing Sergeant Brian Fulton of the Montgomery Police Department and Special Agent Devin Whittle gave testimony as the only two witnesses. Testimony revealed details surrounding this incident that bear significance on this motion. Special Agents DeJohn and Whittle surveilled Watson throughout the day. The agents did so from Watson's residence and by following him driving away from his residence. Although the purpose of the surveillance rested on the intent to interview Watson, no attempt was made to knock on the door of his home or to call his cellular phone. The special agents contacted Montgomery Police Department and asked for assistance in stopping Watson because of possible capias warrants. No agent or officer checked any database to verify a warrant before Watson was stopped. Specifically, the traffic stop that Sgt. Fulton initiated on December 23, 2003 resulted from orders from S.A. Whittle, to effect an interview with Martell Watson. Although it is undisputed that the stop resulted from an apparent seat belt infraction, no officer issued any citation but rather at most a verbal warning. During the stop Sgt. Fulton learned that defendant Watson's driver's license was suspended. However, Sgt. Fulton completed the traffic stop and left

the scene, Special Agents Whittle and DeJohn began their questioning of Watson.

During the attempted interview, Watson declined to comment on the purpose of the questioning but did answer that his cellular phone, number 334-221-8898 lay inside the automobile and he did wish to retrieve it. Upon this answer, the agents seized the phone and the automobile and left the scene. Agent Whittle testified that Marty Blane, a private citizen had that particular phone on his personal account as a favor to Leon Carmichael. Furthermore, Blane knew Watson possessed and controlled the phone. Although Agent Whittle stated that Blane wanted the phone back, that fact was omitted from the DEA-6 report (regarding the interview with Blane) written by Agent Whittle. Agent Whittle also testified that Leon Carmichael obtained the red Pontiac Grand Am, the vehicular subject of this motion, from an ex-girlfriend and registered the car in Sherri Pettis's name. According to Whittle, Pettis knew Watson drove the "company car" but wanted it back. This fact never appeared in the DEA-6 report written by Agent Whittle.

Sgt. Fulton testified that the traffic stop only lasted a few minutes. Agent Whittle testified that the traffic stop lasted around fifteen minutes and then another twenty minutes for the attempted interview. At the conclusion of this incident, the agents repossessed the car and returned it to Sherri Pettis while confiscating the phone and entering it into evidence. The agents alleged they had information that both the car and phone were involved in the alleged Leon Carmicahel drug trafficking organization known for approximately a week prior to stopping Watson.

## ARGUMENT SUPPLEMENT

### 1.     The Detention of Watson was Unreasonable Under the Fourth Amendment

After Sgt. Fulton completed the traffic stop, no other detention, search, or seizure of any property by any other law enforcement agent was valid under the Fourth Amendment or authorized by any exigent circumstance. "[W]e have consistently held that once an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e. a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences

from those facts, reasonably warrant the intrusion." *U.S. v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999), reh'g and reh'g en banc denied, 192 F.3d 132 (11th Cir. 1999). "A driver must be permitted to proceed after a routine traffic stop if a license and registration check reveal no reason to detain the driver unless the officer has reasonable articulable suspicion of other crimes or the driver voluntarily consents to further questioning." *U.S. v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000).

During the stop of Watson, Sgt. Fulton completed all purposes for the stop. He checked for capias warrants, which came back negative. He issued a verbal warning for the seat belt infraction and discovered that Watson's license was suspended. After no citations issued and no impound called for the vehicle, Sgt. Fulton then left the scene evidencing the completion of the stop.

"[D]uring incidental seizure of defendant attendant to stop of vehicle for purpose of issuing citation...for not wearing seat belt, never developed individualized suspicion of defendant based on any acts or omissions of defendant sufficient to justify seizure of defendant beyond time necessary to issue citation or warning..." *U.S. v. Rodriquez-Diaz*, 161 F.Supp.2d 627 (D.Md.,2001).

"When a police officer ignored front passenger's seat belt violation, which was purpose of traffic stop, anc conducted investigation into lawfulness of defendant's possession and operation of vehicle, officer exceeded permissible scope and duration of stop, and thus officer unreasonably prolonged defendant's detention and failed to employ least intrusive means to conclude traffic stop in violation of defendant's Fourth Amendment right to be free from unreasonable seizure." *Id*.

According to Fulton's and Agent Whittle's testimony, the special agents were on the scene immediately after the initiation of the traffic stop but did not participate in the stop. Instead, the agents waited for the completion of the stop to initiate their attempted interview, wholly separate from the traffic incident. Because all purposes of the stop were completed, any further questioning, detention, and particularly seizures of any personal property necessitated reasonable and articulable suspicion that criminal activity was afoot. Watson's further detention was unreasonable.

2.  **The Seizure of the Automobile and Cellular Phone Violated the Fourth Amendment**

The warrantless seizure of the automobile and cellular phone was unreasonable and effectuated under no legal authority. In *United States v. Cooper*, 133 F.3d 1394 (11th Cir.1998) the Eleventh Circuit struck down an argument from the government that officers could act as repossession agents of a private individual because a state agency's control over an automobile is not a "private action."

In *Cooper*, an officer pulled Cooper over for a traffic stop. Upon initiation of the stop, the officer inquired into the status of the driver's possession of the automobile. The driver rented the automobile from Budget Rental, but exceeded his rental agreement by four days. Budget had neither reported the car stolen or attempted to repossess the car and informed the officer during the stop. With help from another trooper, the officer drove the car off the scene, in effect repossessing it for Budget.

Watson's situation is analogous to *Cooper* regarding both the cellular phone and the automobile. Although Agent Whittle contends that Blane wanted his phone back and Pettis wanted her (Carmichael's) car back, neither claim is memorialized in their reports. Assuming those facts were true, neither Blane nor Pettis reported their property stolen, attempted to contact Watson regarding his possession of the property, nor did they attempt to repossess either item.

Agents Whittle and DeJohn impermissibly took the role of a private repossession agent of two private citizens and took property from Watson, whom had legal control of the phone. Neither agent had a warrant, a developed suspicion from the facts of the traffic stop, or any exigent circumstance to seize the phone that could not have been effectuated by obtaining a warrant.

During this motion hearing, the government claimed mobility as an exigent circumstance in this instance. Mobility of the phone fails as an exigent circumstance due to the fact that the seizure of the automobile rendered Watson immobile. Testimony from Agent Whittle proved that the whereabouts of Watson were not in question on December 23, 2003. Ample time existed from the December 16, 2003 interviews and phone records introduced at the hearing in order to obtain a

warrant if probable cause actually existed. Either it did not exist or the agents opted to take matters into their own hands rather than securing a warrant. Both situations render the seizure of the cellular phone impermissible under the Fourth Amendment and it is due to be suppressed.

WHEREFORE, PREMISES CONSIDERED, the Defendant supplements the previously entered Motion to Suppress, and prays this Honorable Court suppress the seized phone.

Respectfully submitted,

    s/Susan G. James
    SUSAN G. JAMES
    Attorney at Law
    600 South McDonough Street
    Montgomery, Alabama 36104
    Phone: (334) 269-3330
    Fax: (334) 834-0353
    E-mail: sgjamesandassoc@aol.com
    Bar No: ASB7956J64S

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2007 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

A. Clark Morris
Assistant United States Attorney
P.O. Box 197
Montgomery, AL 36101

Respectfully submitted,

    s/Susan G. James
    SUSAN G. JAMES
    Attorney at Law
    600 South McDonough Street
    Montgomery, Alabama 36104
    Phone: (334) 269-3330
    Fax: (334) 834-0353
    E-mail: sgjamesandassoc@aol.com
    Bar No: ASB-7956-J64S