IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:07-CR-145-MHT |
| v. | ) | |
| | ) | |
| MARTELL WATSON | ) | |

**POST-HEARING RESPONSE TO
WATSON'S MOTION TO SUPPRESS**

**COMES NOW** the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and files its post-hearing response to the Defendant's motion to suppress as follows:

Seizure of the Vehicle was Justified

The court noted at the suppression hearing that there were two separate and distinct portions of the stop; first, when Montgomery Police Officer Fulton pulled over Watson for a traffic violation, gave Watson a warning and then left the scene; and second, when the federal agents approached Watson. The court further mentioned that because the traffic stop was completed and Officer Fulton had left the scene, federal agents approached Watson pursuant Terrry v. Ohio, 392 U.S. 1 (1968)(Acceptable for police to stop persons and detain them briefly in order to investigate a

1

reasonable suspicion.) While the government agrees that agents had reasonable suspicion to believe that Watson had been involved in a crime[1], agents actually approached Watson to interview him as a possible witness in the Leon Carmichael prosecution, not to investigate any crime committed by Watson. Agents did not approach Watson with the intent to seize his vehicle or his cellular telephone. During the agents' conversations with Watson, Watson was free to leave (although not free to drive) at any time. Because he was not in custody, no Miranda warning was necessary.

As the court is aware, Watson was driving with a suspended license. Officer Fulton gave Watson a warning for such violation, told the federal agents about the suspended license and left the scene, leaving federal agents in charge of the scene. As the court noted at the suppression hearing, the agents basically had three choices regarding what to do with the Pontiac Grand Am: the agents could have let Watson leave in the vehicle; they could have locked the vehicle and left the vehicle at the scene; or they could have taken the vehicle from the scene.

Given Watson's suspended license, clearly agents could not allow Watson to violate the law and drive the vehicle from the scene. Agents could have locked the vehicle and left the vehicle at the gas station.

---

[1] The government contends that agents had *probable cause* to believe that Watson had been involved in a crime.

2

However, the agents did not have to give Watson the option of impounding the vehicle or leaving it at the scene. Cannon v. State, 601 So.2d 1112 (Ala. 1992)(police did not have to give the defendant an election on whether to have his vehicle impounded or left where parked, in parking lot, before legally impounding vehicle); see also, United States v. Staller, 616 F.2d 1284 (5th Cir. 1980)("[T]o have left the vehicle in the auction company's parking lot—a lot open to the public—could have subjected it to vandalism or theft. The fact that the vehicle was legally parked in a parking lot does not, in and of itself, require the finding that impoundment was unnecessary.") If agents had asked Watson to lock the vehicle or if the agents, themselves, had locked and left the vehicle at the scene, agents should and would have asked Watson to remove any personal items from the vehicle. If the agents had directed Watson to leave the locked vehicle at the scene, the agents and their agencies could be liable for any damage to the vehicle or any missing property from the vehicle. While the government is not suggesting that locking up the vehicle and leaving it at the scene would justify an inventory search, the prudent agent would have requested that Watson remove his personal belongings.

For example, if Watson left a Rolex watch in the vehicle, locked the vehicle and left the scene as directed by the agents, someone could break

into the vehicle and steal the Rolex watch. At this point, the agents and their agencies may be liable for the damage to the vehicle and stolen Rolex. To avoid such, agents should request that Watson remove his personal belongings from the vehicle. Of course, removing his personal belongings from the vehicle does not eliminate the possibility that someone may break into and/or damage the vehicle, but it would decrease the amount of damage and loss.

Hypothetically, if agents had asked Watson to lock the vehicle and left it at the scene, Agent Whittle would have asked Watson to remove his personal items from the vehicle for safe keeping. See attached affidavit. Upon removing his personal items, Watson would remove his phone from the car. If Agent DeJohn asked Watson to see Watson's phone, Watson handed the phone to DeJohn and DeJohn asked Watson his phone number, then Agent DeJohn would have seized the phone as evidence, just as he did in the instant case. Thus, even if agents had locked the car and left it at the scene, they would have seized the phone.

Lastly, agents could have and did take the vehicle from the scene. Sherri Pettis was the documented, registered and legal owner of the Pontiac Grand Am. Under Alabama law, the manner in which a vehicle is titled is prima facie evidence of ownership. <u>Carolina Casualty Insurance</u>

Co. v. Williams, 945 So.2d 1030 (Ala. 2006). As noted by the court, Pettis told agents that Leon Carmichael purchased the Grand Am. Thus, the actual owner was either, Carmichael, who paid for, but did not drive the vehicle, or Pettis, in whose name the vehicle was titled. There is no allegation that Watson owned the vehicle. Because agents were aware of the fact that Pettis wanted the vehicle and that the vehicle was registered to her, they returned the vehicle to her. The agents could have returned the vehicle to Carmichael. Returning the vehicle to Pettis or Carmichael would have necessitated agents requesting that Watson remove his personal items from the car and ultimately seizing the phone.

Moreover, there is no evidence that the agents acted in bad faith. Agents simply wanted to talk with Watson. They were not investigating Watson, they were not seeking to seize his car, they were not seeking to inventory the car, nor were they seeking to seize Watson's phone. The agents were only seeking a witness in the Carmichael case.

## SEIZURE OF THE PHONE WAS JUSTIFIED

After Watson retrieved the cellular phone from his vehicle, handed the cellular phone to Agent DeJohn, and told Agent DeJohn the phone number assigned to that cellular phone, Agent DeJohn and Agent Whittle

5

knew that this cellular phone was evidence of a crime. As outlined during the suppression hearing, agents had previously interviewed Patrick Denton, who told the agents that Denton had taken marijuana to Watson at Carmichael's direction, and that Watson was selling marijuana for Carmichael. Denton said that when he took the marijuana to Watson, Watson was in a black Honda Prelude. Sherri Pettis previously told the agents that she heard Watson sold marijuana out of a black Honda Prelude. She also told agents that she called Watson as soon as she found out about the marijuana seizure at Freddie Williams' house. Further, Marty Blane told agents that he provided Leon Carmichael with cellular telephones that were subscribed to and bill to Marty Blane. Blane knew that Watson was using the phone number (334) 221-8898. Agent Whittle had subpoenaed phone toll records for phone number (334) 221-8898. Those phone records revealed that Watson called Carmichael, William Bolding and Denton many times on November 16th and 17th of 2003.[2] From the evidence adduced at the suppression hearing, it is obvious that Agent

---

[2] According to Denton and corroborated through phone records, the marijuana arrived late on November 16, 2003. Bolding called Denton when he arrived in Montgomery with the marijuana. That call is corroborated by phone records. Watson also called Denton the night of November 16th. In the early morning hours of November 17, 2003, agents executed a search warrant at Denton's residence. While there, Carmichael called Denton. During that call and subsequent conversation, Carmichael directed Denton to go to Freddie Williams to "break down" the marijuana. Soon after that call, Carmichael called Watson.

Whittle and Agent DeJohn had probable cause to believe that this cellular phone was evidence of a crime.

Because the cellular phone was in plain view of the agents, the seizure of the phone was lawful. An officer may seize evidence that is in plain view if; 1) the officer has lawful access to the object seized and; 2) if the incriminating nature of the object seized is immediately apparent. <u>Horton v. California</u>, 496 U.S. 128 (1990). The agents had lawful access to the phone. Watson obtained the phone from his vehicle and voluntarily handed it to Agent DeJohn. Further, the incriminating nature of the cellular phone was apparent. As explained above, agents had ample information regarding this phone to establish probable cause to seize the phone as evidence.

Agents could have obtained a seizure warrant, but the agents were not seeking to forfeit the phone. The agents only wanted to seize the phone as evidence. Moreover, agents could have obtained a search warrant for the phone. However, agents were not seeking to search the phone, only to seize it. Because it was evidence and because the agents had legal access to the phone, the phone was seized pursuant to the plain view doctrine.

## **CONCLUSION**

Based on the forgoing, the government contends that the suppression motion is due to be denied.

Respectfully submitted this the 14th day of January, 2008.

                                      UNITED STATES ATTORNEY
                                      /s/ A. Clark Morris

                                      A. CLARK MORRIS
                                      Assistant United States Attorney
                                      131 Clayton Street
                                      Montgomery, Alabama 36104
                                      Telephone: (334) 223-7280
                                      Fax: (334) 223-7135
                                      E-mail: clark.morris@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:07-CR-145-MHT |
| v. | ) | |
| | ) | |
| MARTELL WATSON | ) | |

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Susan James.

    Respectfully submitted,

    LEURA G. CANARY
    UNITED STATES ATTORNEY

    /s/ A. Clark Morris
    A. CLARK MORRIS
    Assistant United States Attorney
    131 Clayton Street
    Montgomery, Alabama 36104
    Telephone: (334) 223-7280
    Fax: (334) 223-7135
    E-mail: clark.morris@usdoj.gov

## AFFIDAVIT

I, Devin Whittle being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration and have been for the last 13 years.

2. On December 23, 2003, DEA Task Force Agent David DeJohn and I approached Martel Watson after learning Watson was driving a red Pontiac Grand Am registered to Sherri Pettis with a suspended license.

3. As the court is aware, Pettis informed me and Agent DeJohn that she wanted the Pontiac to be returned to her. Pursuant to her request, we took the car and returned it to Pettis.

4. During the suppression hearing, the court mentioned that instead of returning the car to Pettis, Agent DeJohn and I could have locked the vehicle and left it at the scene of the traffic stop. If we had instructed Watson to lock the vehicle and leave it, I would have directed Watson to remove his personal items from the vehicle. I would have done so due to a concern that I or my agency might be liable for any damage to the vehicle or any stolen property from the vehicle.

Further your Affiant sayeth naught. I swear under penalty of perjury that the forgoing is true.

_____
Devin Whittle
Special Agent DEA

Subscribed and sworn to before me

this the __14TH__ day of January, 2008.

_____
Notary Public

My commission expires: __9-23-09__