IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr145-MHT [WO] |
| | ) | |
| MARTELL DEWAN WATSON | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Currently pending before the Court are Defendant's Motion to Suppress (Doc. #76) and Supplemental Motions to Suppress (Doc. #93, #97).[1] Defendant, Martell Watson (Watson), seeks to suppress a cellular telephone seized on December 23, 2003, and the electronic serial number located on the outside of that telephone. Def.'s Mot. to Suppress (Doc. #19).[2] Upon consideration of the motions and the testimony at the

---

[1] The procedural posture of this motion is peculiar and noteworthy. In an untimely manner, Watson filed a motion in limine seeking an order excluding any and all evidence concerning a cellular telephone seized on December 23, 2003, by federal agents. Def.'s Mot. In Limine (Doc. #76). The Government opposed the motion. Govt's Resp. to Mot. In Limine (Doc. #77). Construing the motion in limine as a motion to suppress, the Honorable Myron H. Thompson, District Judge, referred the motion to the undersigned for consideration and recommendation. Order of December 11, 2007 (Doc. #90). In light of the manner in which the motion to suppress came forth, the undersigned refers to the motion in limine construed as a motion to suppress as the original motion to suppress in this Recommendation.

[2] During the suppression hearing, the Court raised a question whether Watson sought to suppress his statement identifying the telephone number of the cellular telephone in question. Counsel for Watson responded in the affirmative when asked "You [a]re not asking for statements or anything else?" Counsel later informed the Court his client seeks to suppress "everything as far as the whole stop goes." The Court, as is discussed further below, directed the parties to brief this issue if they had additional

(continued...)

evidentiary hearing, the undersigned RECOMMENDS that the motions are DENIED.

## I.    BACKGROUND

Based on the parties' briefs and testimony at the hearing held on January 9, 2008, and to a preponderance of the evidence,[3] the Court finds as follows: On December 23, 2003, Drug Enforcement Agency Special Agent Devin Whittle (Agent Whittle)[4] and Task Force Agent David DeJohn (Agent DeJohn) (hereinafter collectively the agents) conducted surveillance of Watson at his residence in Montgomery, Alabama. Their surveillance began as a result of information the agents obtained the previous week regarding Watson's involvement in a marijuana trafficking organization led by Leon Carmichael (Carmichael). This information resulted from three interviews conducted with individuals involved in the Carmichael drug trafficking organization in November

---

[2](...continued)
arguments to set forth post-hearing, but Watson failed to do so. To the extent Watson attempted to raise a challenge to the constitutionality of his statement at the suppression hearing, he has failed to present any argument, law, or evidence supporting this contention. The undersigned therefore finds Watson abandoned this challenge. The undersigned adds that the post-hearing brief does not even specifically request the Court to suppress the statement; it merely seeks suppression of the cellular telephone. Def.'s Post-Hearing Br. (Doc. #97) at 5.

[3]The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. United States v. Beechum, 582 F.2d 898, 913 n. 16 (5th Cir. 1978) (citing Lego v. Twomey, 404 U.S. 477, 489 (1972)).

[4]Agent Whittle testified he has worked for the Drug Enforcement Agency for approximately thirteen years. He also testified he worked as a Montgomery police officer for eight years, serving in the patrol division for two of those years. In totality, Agent Whittle testified he has worked eighteen years in narcotics.

2003.

Specifically, Agent Whittle testified that on November 18, 2003, the agents interviewed Patrick Denton (Denton). They learned Denton had taken 50 pounds of marijuana to Watson at the direction of Carmichael on November 1, 2003.[5] Agent Whittle testified Denton also identified Watson as Carmichael's brother-in-law.

On December 16, 2003, Agent Whittle testified the agents interviewed Sherri Pettis (Pettis), who told them Watson was driving a red Pontiac Grand Am registered in her name. Agent Whittle testified Pettis told the agents she wanted the car returned to her. The agents also learned from Pettis that Watson drove a black Honda Prelude from which he sold marijuana.

Agent Whittle testified the agents also interviewed Marty Blane (Blane) on December 16, 2003. Blane informed the agents he purchased and subscribed service to several cellular telephones for Carmichael. Blane identified two cellular telephone numbers to which he subscribed for Carmichael: 221-8899 and 221-8898. Agent Whittle testified Blane stated William Bolding (Bolding), a co-defendant in this case, used the former number, while a man known as "Martell," (the Defendant here) used the later number. Like Pettis, Agent Whittle testified Blane informed the agents he did not want

---

[5]During this interview, Agent Whittle testified Denton referred to Watson as Montell. The agents then confirmed the identification of Montell as Watson using a picture.

Bolding or Watson using his phones any longer.[6]

The day prior to Pettis's and Blane's interviews, Agent Whittle testified he issued several administrative subpoenas to T-Mobile for telephone records of the two numbers Blane identified as well as one other number to which Carmichael subscribed. With respect to the numbers Blane identified (221-8899 and 221-8898), Agent Whittle testified the telephone records confirmed those numbers were subscribed to Blane as of January 31, 2001. Agent Whittle testified the records further indicated Watson, Bolding, and Carmichael called each other numerous times between November 16, 2003, and November 17, 2003, when a large shipment of marijuana arrived in Montgomery, Alabama at the direction of Carmichael. See also Govt's Exh. 1-2.

Turning back to December 23, 2003, while conducting surveillance of Watson, the agents followed Watson, who was driving a red Pontiac Grand Am, from his home to a post office in Montgomery, Alabama. Agent Whittle testified the agents decided to have Watson's Grand Am stopped on the belief that he had an outstanding capias warrant[7] and

---

[6]The Court notes, as Watson points out, the agents did not include this fact in their interview notes. When questioned about the omission, Agent Whittle indicated that at the time the notes were created, he and Agent DeJohn did not believe this fact was a significant part of the investigation. The Court does not find the omission undermines Agent Whittle's credibility.

[7]Agent Whittle testified while trying to locate an address for Watson, narcotics detectives of the Montgomery Police Department told him Watson had an outstanding capias warrant for Watson's arrest. Agent Whittle further explained he could not verify the warrant's existence because he did not have access to the computer system containing this information.

for the purpose of talking to him about Carmichael. They then contacted the Montgomery Police Department for assistance in stopping Watson. Sergeant Brian Fulton (Sergeant Fulton)[8] testified he was dispatched to met with the agents across the street from the post office, where they discussed the stop. The agents identified the red Pontiac Grand Am parked at the post office and Watson. Having observed Watson in the Grand Am, Sergeant Fulton testified he got behind the vehicle, and the agents followed behind the police officer. While following Watson, Sergeant Fulton testified he noticed Watson was not wearing his seatbelt. Sergeant Fulton then stopped Watson for the seatbelt infraction in a gas station parking lot. Sergeant Fulton approached Watson and provided him with reason for the stop. Agent Whittle testified he and Agent DeJohn watched Sergeant Fulton talk to Watson about the seatbelt infraction from their car. Sergeant Fulton then ran a computer check of Watson's information and for the warrants and learned Watson had a suspended driver's license. At some point, Agent Whittle testified Watson stepped out of the vehicle. Sergeant Fulton testified that within a few minutes, he issued a citation for the seatbelt infraction and informed Watson it was unlawful for him to drive with a suspended license.[9] Sergeant Fulton testified he relayed this information to the agents and then departed from the scene.

---

[8]Sergeant Fulton testified he has worked for the Montgomery Police Department since 1991, spending approximately three years in patrol, eleven years in traffic and motors, two years in the detective division, and the last month in traffic as a sergeant.

[9]The undersigned notes Sergeant Fulton testified he could not say with certainty whether he issued a written or verbal citation.

5

As Sergeant Fulton departed from the scene, the agents approached Watson, who was standing near the vehicle. After introducing themselves, the agents asked Watson about his relationship with Carmichael. Watson replied he did not want to discuss Carmichael. The agents continued to ask Watson questions about where he was going and coming from, to which Watson responded. Agent DeJohn then asked Watson to whom the red Pontiac Grand Am was registered. Watson indicated the vehicle was a company car registered to Pettis. Agent DeJohn asked whether Pettis knew Watson drove the vehicle, to which Watson replied that he did not know. Agent DeJohn asked Watson for Pettis's telephone number, which Watson provided. Agent DeJohn then called Pettis[10] and asked if she wanted the vehicle returned.

Because Pettis replied in the affirmative, Agent DeJohn informed Watson, he and Agent Whittle were taking custody of the vehicle, but Watson was free to go. Agent DeJohn asked Watson if he had any personal effects in the vehicle. Watson replied that he had a cellular telephone in the vehicle. After Watson retrieved the phone from the vehicle, Agent DeJohn asked Watson if the phone was his. Watson said yes. Agent DeJohn then asked if he could see the phone. Watson handed the cellular telephone over to Agent DeJohn, who asked Watson for the cellular phone's telephone number. Watson responded: 334-221-8898. Agent DeJohn then seized the cellular telephone, and the agents and Watson departed separately from the scene.

---

[10]Agent Whittle testified he only heard Agent DeJohn's side of this conversation.

## II.    DISCUSSION

Watson set forth several arguments in support of his motion to suppress. First, Watson argues his detention by the agents for questioning was unreasonable because they held him beyond the purposes of the initial traffic stop without any reasonable or articulable suspicion of criminal activity. Def.'s Supp. Mot. to Suppress (Doc. #93) at 1-2. Second, despite counsel for Watson's concession at the hearing that the police could lawfully take Grand Am into custody, Watson argues in his post-hearing brief the agents unlawfully seized the vehicle and cellular phone under the Fourth Amendment. In particular, he maintains no exigency existed, nor did the agents develop suspicion from the facts of the traffic stop to justify the warrantless seizure of either item. Def.'s Post-Hearing Br. (Doc. #97) at 4. With respect to the cellular phone, Watson also claims the plain view doctrine does not apply to justify the phone's seizure, as the agents had no lawful right of access to Watson's cellular phone without a warrant, and the cellular phone "is not capable of rendering an incriminating nature so immediately apparent as to justify its seizure." Def.'s Supp. Mot. to Suppress (Doc. #93) at 3. He further argues exigent circumstances would not justify the seizure of the cellular telephone. Def.'s Post-Hearing Br. (Doc. #97) at 2.[11]

---

[11] In his original Motion to Suppress, Watson argued probable cause did not exist to search his vehicle. He also argued no exigent circumstance existed to justify a warrantless search of the vehicle, nor did he consent to the search. Mot. In Limine (Doc. #76) at 2. At the hearing, counsel seemed to reiterate this argument. No evidence was presented during the hearing that the agents actually searched the vehicle. In the absence
(continued...)

The Government counter argues that Watson lacks standing to challenge the seizure of the cellular phone for two reasons. First, it argues Watson did not have an expectation of privacy in the cellular phone if he borrowed the phone and only used it sporadically. Govt's Resp. to Mot. to Suppress (Doc. #94) at 4-5. Second, the Government maintains Watson lacks standing because he does not contest the search of the phone, but merely its seizure. Govt's Resp. to Mot. to Suppress (Doc. #94) at 4-5. Additionally, the Government maintains Watson's detention following the traffic stop was reasonable in light of the agents' need to arrange for the return of Pettis's vehicle and for Watson to obtain his effects from the vehicle. Id. at 6. The Government also maintains the agents approached Watson, in good faith, for the purpose of interviewing him as a possible witness in the Carmichael prosecution. Govt's Post-Hearing Br. (Doc. #98) at 2, 5. With respect to the vehicle's seizure, the Government maintains the agents had the ability to take the vehicle from the scene, because the documented, registered, and legal owner of the vehicle, Pettis, informed the agents she wanted the vehicle returned to her and Watson could not lawfully drive the vehicle on a suspended license. See id. at 2, 4-5. As to the cellular telephone, the Government argues the agents seized the phone lawfully under the plain view doctrine. In particular, the Government argues the agents had probable cause to believe the phone was evidence of a crime based on the

---

[11](...continued)
of any evidence indicating a search of the vehicle occurred, the Court finds no search of the vehicle occurred.

information they had received previously from Blane and Pettis as well as Watson's physical possession of the phone and his statement announcing the telephone number. See id. at 5-7.

### A.   Standing[12]

The Government sets forth two arguments contending Watson lacks standing to challenge the seizure of the cellular phone. The Court first addresses the Government's argument that Watson lacks standing because he does not contest the search of the cellular phone, but merely its seizure. With respect to the standing of individual defendants, it is clear in this Circuit "'[a] person possesses standing when he has a reasonable expectation of privacy from governmental intrusion in either the premises searched *or the items seized*.'" United States v. Delgado, 903 F.2d 1495, 1501 (11th Cir. 1990) (emphasis added) (quoting Mancusi v. DeForte, 392 U.S. 364, 368 (1968)). While this argument lacks merit, the Government nevertheless argues Watson did not have a reasonable expectation of privacy in the cellular phone if he borrowed the phone and only used it sporadically. Govt's Resp. to Mot. to Suppress (Doc. #94) at 4-5.

The Fourth Amendment prohibits law enforcement from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. In particular, the Amendment's prohibition "protects an individual in those places where [he] can demonstrate a

---

[12]At the hearing, the Government conceded Watson had standing to contest the seizure of the vehicle. See also Govt's Resp. to Def.'s Mot. to Suppress (Doc. #94) at 4.

reasonable expectation of privacy against government intrusion," and "only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." United States v. Cooper, 203 F.3d 1279, 1283-84 (11th Cir. 2000). "The party alleging an unconstitutional search must establish both a subjective and an objective expectation of privacy. The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006) (quotation marks and citations omitted); see also Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (providing the complainant need prove only that the search or seizure violated his reasonable expectation of privacy in the item or place at issue) (citing Rawlings v. Ky., 448 U.S. 98, 104 (1980)). The individual challenging the seizure bears the burdens of proof and persuasion. Kimmelman, 477 U.S. at 374 (providing the complainant need prove only that the search or seizure was illegal); see also United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (citing United States v. Eyster, 948 F.2d 1196, 1209 (11th Cir. 1991)). Accordingly, the threshold issue focuses on whether Watson established in his motions to suppress he possessed a reasonable expectation of privacy in the cellular phone.

To determine whether an individual has a reasonable expectation of privacy in a cellular phone, courts have looked to such indicia as whether the individual took normal

precautions to maintain privacy in the phone; whether the individual had a property or ownership interest in the phone, whether the individual had the right to exclude others from using the phone, and whether the individual exhibited a subjective expectation of privacy in the cellular phone. See, e.g., United States v. Finley, 477 U.S. 250, 259 (5th Cir. 2007); United States v. Mercado-Nava, 486 F. Supp. 2d 1271, 1276 (D. Kan. 2007). Watson's motion to suppress does not allege any details concerning whether he had a reasonable expectation of privacy in the cellular phone. Instead, at the hearing, Watson's counsel alleged the cellular phone was owned by Watson's employer, who made a deal with another individual to get phones under the individual's name.[13] Counsel further alleged Watson had physical possession, use, and control of the phone on the date of the traffic stop, December 23, 2003, under an agency theory. Counsel also alleged the "phones" were used by all employees and might have been swapped around within the employer-employee relationship. Indeed, counsel stated that "[i]f someone took one car one day, [it] may be a phone was in it." These allegations constitute all that Watson has put forth to establish his privacy interest in the cellular phone.

"'A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . . A court need not act upon general or conclusory assertions.'"

---

[13]The Court notes Watson's counsel did not specifically identify the employer or the individual by their proper names.

Cooper, 203 F.3d at 1284 (quoting United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted)).  Watson's references fall far short of meeting this standard, especially considering Watson's claim to standing is founded on conclusory allegations (Watson had physical possession, use, and control of the cellular phone on December 23, 2003), rather than on facts demonstrating to a preponderance of the evidence that conclusion to be true.  Moreover, counsel contradicted this allegation at the hearing when he alleged the cellular phones provided by Watson's employer were used by all employees and might have been swapped around between the employer and/or employees or placed randomly in company vehicles.  Even after the Government raised the issue of standing in its opposition to Watson's motion to suppress, Watson did not file a motion to amend his original or supplemental motion to suppress demonstrating a reasonable expectation of privacy in the cellular phone.  See United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (acknowledging defendant Sneed failed to amend his motion once his standing was questioned).  Moreover, at the hearing, the Court raised the issue with the parties and pointed out that Watson had not briefed this issue.  Watson also did not address the issue in his post-hearing brief.[14]  In fact, only twice in Watson's three sets of briefs does he even refer to the cellular phone in the possessive form.  Def.'s Mot.

---

[14]As provided above, at the end of the hearing, the undersigned requested additional briefing on this case.  While the Court directed the parties to discuss several specific issues, the Court did not expressly limit the parties from addressing any other issues in the case.  Watson could have, but did not, address the issue of standing further.

to Suppress (Doc. #93) at 1, 3.

Beyond Watson's allegation, testimony at the suppression hearing indicated the cellular phone was in the physical possession of and used by Watson on November 16, 2003, and November 17, 2003, and in the company vehicle he drove on December 23, 2003, the date of the traffic stop, when Watson told the agents the phone belonged to him. While Agent Whittle testified Watson stated the cellular phone belonged to him, at the hearing, Watson's counsel alleged ownership of the phone belonged to Watson's employer. As provided immediately above, counsel also alleged other employees had access to employer cars containing random phones and the employees swapped around phones. This allegation undermines Watson's statement. Watson did not further allege or provide any evidence of an ownership or possessory interest in the phone. Thus, all the record shows is that Watson used the phone for two days in November 2003, and the phone was in the vehicle Watson drove on date of the traffic stop.[15] These facts simply do not demonstrate by a preponderance of the evidence a legitimate expectation of privacy in the cellular phone. See United States v. Finley, 477 U.S. 250, 259 (5th Cir. 2007) (finding defendant had standing to challenge the search of his employer-issued cellular phone where record showed defendant had a possessory interest in the phone, defendant used the phone for personal reasons, defendant had right to exclude others from

---

[15]The undersigned observes counsel for Watson suggested at the suppression hearing other employees may have had access to the cellular phone in question. The testimony at the hearing did contradict this allegation.

using the phone, and defendant took normal precautions to maintain his privacy in the phone); United States v. Mercado-Nava, 486 F. Supp. 2d 1271, 1276 (D. Kan. 2007) (concluding defendant lacked standing to challenge search of the cell phones where the record only demonstrated the cell phones were taken from defendant's person); see also United States v. Thompson, 171 Fed. Appx. 823, 828 (11th Cir. 2006) (finding defendant's disclaimer of any interest or ownership in the motel room deprived defendant of subjective expectation of privacy to assert standing) (citing United States v. Sweeting, 933 F.2d 962, 964 & n. 2 (11th Cir. 1991) (concluding that defendants who denied any relationship in their mother's residence except access did not have standing to object to the search, despite fact that government established at trial defendants actually lived at the residence)). Because Watson did not assert ownership over the cellular phone, did not provide any evidence demonstrating his expectation of privacy or that he had a legitimate possessory interest[16] in the cellular phone or had taken steps to insure his privacy in the

---

[16]The Court observes the Eleventh Circuit has stated "[i]t is true that a *possessory interest* is all that is needed for the Fourth Amendment's reasonableness requirement to apply to a seizure." Lenz v. Winburn, 51 F.3d 1540, 1550 (11th Cir. 1995) (citing Soldal v. Cook County, Ill., 506 U.S. 56, 69 (1992)); see also United States v. Jacobsen, 466 U.S. 109, 113 (1984) (emphasis added). While Watson had the cellular phone on his person when stopped on December 23, 2003, Watson has not demonstrated a property or possessory interest in the cellular phone. Although the Eleventh Circuit has not directly spoken to this issue, the Tenth Circuit has concluded that "[m]ere physical possession or control of property is not sufficient to establish standing to object to a search of that property." United States v. Arango, 912 F.2d 441, 444-46 (10th Cir. 1990) (citing United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995)). The undersigned reads the Tenth Circuit's conclusion as another way of stating the Eleventh Circuit's mandate that a possessory interest must be shown to establish standing to challenge a seizure of an item.
(continued...)

cellular phone, the Court finds Watson has not met his burden of establishing standing to contest the seizure of the cellular phone.[17]

### III. CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS Watson's Motion to Suppress (Doc. #76) and Supplemental Motions to Suppress (Doc. #93, #97) are DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before February 21, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon

---

[16](...continued)
As Watson has only *alleged* the cellular phone was on his person, under his control, and used by him on December 23, 2003, albeit inconsistently, he has only shown physical possession or mere control, as opposed to the requisite possessory interest.

[17]The Court need not reach Watson's arguments challenging the constitutionality of the cellular phone's seizure, as he lacks standing to contest that seizure.

grounds of plain error or manifest injustice. Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982). See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982). See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 8th day of February, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE