IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:07cr145-MHT [WO] |
| | ) | |
| MARTELL DEWAN WATSON | ) | |

**AMENDED RECOMMENDATION OF THE MAGISTRATE JUDGE**[1]

For the reasons that follow, I amend my Recommendation (Doc. #101) to include an alternative reason to DENY Defendant's Motion to Suppress (Doc. #76) and Supplemental Motions to Suppress (Doc. #93, #97).[2]  As stated in the Recommendation, Defendant, Martell Dewan Watson (Watson), seeks to suppress a cellular telephone seized on December 23, 2003, and the electronic serial number located on the outside of that telephone.[3]  Def.'s Mot. to Suppress (Doc. #19).  Assuming *arguendo* that Watson

---

[1]This Recommendation in no way vacates the analysis and conclusions presented in the original Recommendation (Doc. #101) entered in this matter.  Rather, this Recommendation merely serves to supplement the original Recommendation.

[2]Rather than repeating the background section presented in my Recommendation, I incorporate by reference that section (Doc. #101).

[3]It is worth repeating that during the suppression hearing, the Court raised a question whether Watson sought to suppress his statement identifying the telephone number of the cellular telephone in question.  Counsel for Watson responded in the affirmative when asked "You [a]re not asking for statements or anything else?"  Counsel later informed the Court his client seeks to suppress "everything as far as the whole stop goes."  The Court directed the parties to brief this issue if they had additional arguments to set forth post-hearing, but Watson failed to do so.  To the extent Watson attempted to raise a challenge to the constitutionality of his statement at the suppression hearing, he

(continued...)

has standing to contest the seizure of the cellular phone, I now address Watson's substantive Fourth Amendment challenges.

I.  DISCUSSION

   A.  **Watson was not unreasonably detained**

During the hearing, counsel for Watson conceded that the initial stop of the vehicle for a seatbelt infraction did not violate the Fourth Amendment. Instead, Watson claims the "attempted interview," by Drug Enforcement Agency Special Agent Devin Whittle (Agent Whittle) and Task Force Agent David DeJohn (Agent DeJohn) (hereinafter collectively the agents), which was "wholly separate from the traffic incident" unreasonably detained him, because the initial stop was completed once Sergeant Fulton issued Watson a warning citation for the infraction and driving with a suspended license and departed from the scene. Def.'s Post-Hearing Br. (Doc. #97) at 3.

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. U.S. Const. amend. IV. A seizure takes place "whenever a police officer accosts an individual and restrains his freedom to walk away." United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003) (citation omitted). Traffic stops qualify as seizures under the Fourth Amendment.

---

[3](...continued)
has failed to present any argument, law, or evidence supporting this contention. The undersigned again finds Watson abandoned this challenge. The undersigned adds that the post-hearing brief does not even specifically request the Court to suppress the statement; it merely seeks suppression of the cellular telephone. Def.'s Post-Hearing Br. (Doc. #97) at 5.

2

Delaware v. Prouse, 440 U.S. 648, 653 (1979); Perkins, 348 F.3d at 969. "Because a routine traffic stop is only a limited form of seizure," however, "it is more analogous to an investigative detention than a custodial arrest." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001). Therefore, the Eleventh Circuit has instructed district courts to analyze the legality of these stops under the standard articulated in Terry v. Ohio, 392 U.S. 1 (1968). Id. (citations omitted). According to that standard, "an officer's investigation of a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Boyce, 351 F.3d 1102, 1106 (11th Cir. 2003) (citing Terry, 392 U.S. at 20). Furthermore, the duration of the traffic stop "must be limited to the time necessary to effectuate the purpose of the stop." Purcell, 236 F.3d at 1277. Watson clearly indicated at the hearing he did not challenge either the legality or the duration of the initial stop. Put differently, Watson does not dispute Sergeant Brian Fulton (Sergeant Fulton) had a reasonable suspicion to support both the initial traffic stop and the license checked that ensued.

Instead, Watson argues once Sergeant Fulton discovered Watson had a suspended driver's license, checked for outstanding capias warrants and issued a warning for the seat belt infraction, Sergeant Fulton completed the stop; thus, the agents had no basis to further detain Watson. According to this argument, once Sergeant Fulton's suspicions of illegality had been completely dispelled, Watson was free to go. Nevertheless, the agents approached Watson and began asking him questions, which Watson argues, extended his

detention unnecessarily in violation of Terry.  See Def.'s Post-Hearing Br. (Doc. #97) at 2-3 (citing United States v. Pruitt, 174 F.3d 1215, 1221 (11th Cir. 1999) (stating that, after a traffic citation had been processed, the defendants "should have been free to go, as [the officer] was provided at that time with no reasonable suspicion of their activity and suggesting that, under those circumstances, additional questioning which unlawfully extended their detention violated Terry).

A traffic stop "must last no longer than is necessary to effectuate the purpose of the stop." Pruitt, 174 F.3d at 1220 (citation omitted).[4]  In Pruitt, the Eleventh Circuit made clear that a police officer's "[l]engthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances." Id.  "First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring." Id.; see also Boyce, 351 F.3d at 1106.  "Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." Pruitt, 174 F.3d at 1220.  For purposes of the second situation, a consensual

---

[4] The Eleventh Circuit has stated that, in reviewing a detention, "it is unreasonable extensions of the duration-not the scope of the [questioning]-that could render an otherwise justified detention unreasonable for Fourth Amendment purposes." United States v. Hernandez, 418 F.3d 1206, 1209 n. 3 (11th Cir. 2005).  In other words, the Court does not inquire as to the substantive reasonableness of the questions asked by a police officer in the context of a traffic stop, but only whether the "duration" of the detention was prolonged "for an unreasonable time." Id.  Here, because I find Watson was not "detained" for purposes of the Fourth Amendment at the time the agents asked further questions of him, I need not address whether the alleged extension of the traffic stop's duration was reasonable (or unreasonable) under Hernandez.

encounter does not implicate Fourth Amendment scrutiny. Fla. v. Bostick, 501 U.S. 429, 434 (1991); United States v. Ramirez, 476 F.3d 1231, 1237 (11th Cir. 2007).

In addressing the question of when a Terry traffic stop shifts from a detention to a consensual encounter, the Supreme Court "has held that a person being questioned by police is not seized 'if a reasonable person would feel free to terminate the encounter.'" United States v. Drayton, 536 U.S. 194, 201 (2002); see also Ramirez, 476 F.3d at 1239-40. In other words, if "a reasonable person would feel free to . . . terminate the encounter, the encounter with the police is consensual, and the Fourth Amendment is not implicated." Ramirez, 476 F.3d at 1239-40 (internal citation and punctuation omitted). "This test 'is objective and presupposes an innocent person.'" Id. It is examined under the totality of the circumstances presented in each case, including "whether there is any coerciveness on the part of the police, whether the exchange is cooperative in nature, and whether the defendant has everything he reasonably required to proceed on his journey." Ramirez, 476 F.3d at 1240; see also United States v. Chrispin, 181 F. App'x 935, 938 (11th Cir. 2006).

Guided by the objective standard, the undersigned concludes a reasonable person in Watson's circumstances would have felt free to terminate the encounter with and to discontinue answering questions from the agents. This conclusion is based not only on the fact that Sergeant Fulton had informed Watson he was free to go (even though Watson had a suspended driver's license) and thus had everything he needed to proceed

on his way when the agents approached him, but also, as Watson concedes in his briefings, the agents approached him only after the initial stopped had completed. In particular, the undisputed testimony from the hearing reveals the agents walked up to Watson, who was standing near the vehicle as Sergeant Fulton departed, but they did not block Watson's person from leaving the scene, nor did they physically touch his person. The agents merely approached Watson, introduced themselves, and asked Watson about his relationship with Leon Carmichael (Carmichael). When Watson replied that he did not want to discuss Carmichael, the agents did not force Watson to answer any questions on the subject. These facts suggest Watson choose to answer the agents' questions free of coercion. Viewing the totality of the circumstances, the undersigned concludes the post-citation discussion with the agents was consensual in nature and, as a result, Watson was not detained at any time he spoke with the agents. See Ramirez, 476 F.3d at 1240 (concluding an exchange converted from a traffic stop into a consensual encounter where following the return of identification materials, the defendant was free to proceed on his way and the discussion with the defendant appeared on videotape as cooperative and non-coercive). Consequently, Watson's Fourth Amendment rights were not implicated by this encounter. Having determined that the agents questioning of Watson was constitutionally permissible, I will now address whether the agents lawfully seized the cellular phone.[5]

---

[5] Watson, albeit inconsistently, argues the agents illegally seized the red Pontiac Grand Am. The Government argues to the contrary. While the undersigned finds no authority for the agents to legally seize the car, the Court need not reach this argument, as Watson does not seek to
(continued...)

### B. The Agents Lawfully Seized the Cellular Phone

As outlined in the Recommendation, the Government argues the agents seized the phone lawfully under the plain view doctrine. In particular, the Government argues the agents had probable cause to believe the phone was evidence of a crime based on the information they had received previously from Marty Blane (Blane) and Sherri Pettis (Pettis) as well as Watson's physical possession of the phone and his statement announcing the telephone number. Govt's Post-Hearing Br. (Doc. #98) at 5-7. Watson counter argues that the plain view doctrine does not apply to justify the phone's seizure, because the agents had no lawful right of access to Watson's cellular phone without a warrant, and the cellular phone "is not capable of rendering an incriminating nature so immediately apparent as to justify its seizure." Def.'s Supp. Mot. to Suppress (Doc. #93) at 3.[6] The Court agrees with the Government.

The "plain view" doctrine is often considered an exception to the general rule that warrantless searches and seizures are presumptively unreasonable. See Horton v. Cal., 496 U.S. 128, 135 (1990) ("Where the initial intrusion which brings the police within plain view of . . . an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate."). The "plain view"

---

[5](...continued)
suppress the car, nor does Watson argue the cellular phone was a fruit of the car's seizure.

[6]For the reasons provided infra, the Court need not reach Watson's arguments concerning the exigent circumstances exception.

doctrine allows a warrantless seizure where "(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." United States v. Smith, 459 F.3d 1276, 1290 (11th Cir. 2006).  For an item's incriminating character to be "immediately apparent," the police merely need probable cause to believe the item is contraband.  Tex. v. Brown, 460 U.S. 730, 741-42 (1983).  Probable cause "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . . ; it does not demand any showing that such a belief be correct or more likely true than false.  A practical, nontechnical probability that incriminating evidence is involved is all that is required."  Id. at 742 (internal quotations and citations omitted).  The Court will address each of the two factors in turn.

"It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed."  Horton, 496 U.S. at 136.  Watson does not challenge this aspect of the first factor.  The Court, nonetheless, finds the agents lawfully arrived at the place from which the evidence could be plainly viewed.  The agents here lawfully approached Watson, who was standing near the Pontiac Grand Am parked in a public gas station parking lot, following Sergeant Fulton's lawful traffic stop.  United States v. Hensley, 469 U.S. 221, 235 (1985) ("Having stopped [defendant], the

Covington police were entitled to seize evidence revealed in plain view in the course of the lawful stop."); United States v. Graham, 2007 WL 2746656, at *1-4 (M. D. Ala. Sept. 19, 2007) (finding the plain view doctrine clearly applied to marijuana seen by officers in a car stopped in a Pizza Hut parking lot); see also Soldal v. Cook County, 506 U.S. 56, 69 (1992) (stating that "an officer who happens to come across an individual's property in public area could seize" the property if Fourth Amendment standards are satisfied).

    Despite Watson's objection, I also find the agents had a lawful right of access to the cellular telephone. The record reveals Watson retrieved the cellular telephone from the car upon the agents' pronouncement that they were taking custody of the car and question whether Watson had any personal effects in the car. Watson informed the agents he had a cellular phone in the vehicle. After Watson retrieved the phone from the vehicle, Agent DeJohn asked Watson if the phone was his. Watson said yes. Agent DeJohn then asked if he could see the phone, which Watson held in his hands for the agents to openly see. Watson handed the cellular telephone over to Agent DeJohn. There is no evidence Watson did so under duress or coercion. Rather, the totality of the circumstances indicates Watson freely handed over the cellular telephone. See United States v. Reynolds, 526 F. Supp. 2d 1330, 1342-43 (N. D. Ga. 2007) (finding the deputies could have observed the rifles lying out in the open as soon as they entered the living room). Moreover, as discussed more fully below, the uncontroverted testimony on the record indicates the agents only seized the cellular telephone after Watson provided the

9

telephone number, at which point the agents had probable to believe the cellular phone was evidence of a crime. See, e.g., United States v. Murphy, 2007 WL 2461976, at *3 (M. D. Ala. Aug. 28, 2007) (finding Ms. Murphy voluntarily exposed the firearms to the trooper when she opened the cargo door of her car); United States v. Stanyard, 2007 WL 1655958, at * 4 n. 5 (M. D. Ala. June 7, 2007) (finding the plain view doctrine would permit the seizure of a marijuana blunt from behind Mr. Stanyard's ear); United States v. Mitchell, 2007 WL 2915889, at *4 & n. 7 (S. D. Ga. Oct. 3, 2007). Thus, the Court finds the agents had a lawful right of access to Watson's cellular telephone.

Turning to the second factor, as stated above, Watson disputes that the incriminating nature of the cellular telephone was not immediately apparent. The definition of the term "immediately apparent" has been the subject of some debate within the Supreme Court. See Tex. v. Brown, 460 U.S. 730, 741 (1983) (plurality opinion) ("[T]he use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine."). Disputes over the term's meaning primarily arise in cases in which law enforcement officers have had to conduct additional examinations to determine the import of an object. United States v. Pindell, 336 F.3d 1049, 1055 (D.C. 2003) (citing Horton, 496 U.S. at 136-37).

It is clear, however, the "immediately apparent" requirement is satisfied if the

officers have probable cause to believe the item viewed is evidence of a crime or contraband.  See Ariz. v. Hicks, 480 U.S. 321 (1987); Pindell, 336 F.3d at 1055; see also United States v. Roberts, 619 F.2d 379, 381 (5th Cir. 1980) ("Police officers are not required to ignore the significance of items in plain view even when the full import of the objects cannot be positively ascertained without some examination.").  Under the "probable cause" standard, the facts available to an officer must "warrant a man of reasonable caution in the belief . . . that certain items may be contraband . . . or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false."  Tex. v. Brown, 460 U.S. at 742; see United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990) (noting probable cause does not demand an officer be "sure" or "certain," but only that the facts available to a reasonably cautious man would warrant a belief that certain items may be useful as evidence).  "A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required."  Tex. v. Brown, 460 U.S. at 742 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

The Court finds the uncontroverted evidence adduced at the hearing deflates Watson's argument.  Specifically, the record reveals the agents had information from Blane that Watson had used the cellular telephone with the number Watson stated  – (334-221-8898) – to the agents.  Moreover, Blane told the agents he purchased and subscribed service to several cellular telephones for Carmichael.  The agents also had telephone records from T-Mobile indicating Watson, Carmichael, and William Bolding (Bolding)

called each other numerous times between November 16, 2003, and November 17, 2003, when a large shipment of marijuana arrived in Montgomery, Alabama at the direction of Carmichael. When the agents talked to Watson on December 23, 2003, Watson stated he had a cellular phone in the car and stated it belonged to him. Watson then identified the cellular telephone number (334-221-8898), which matched the number Blane identified as used by Watson. Based on all this information, the undersigned finds the officers had probable cause to believe the cellular telephone constituted incriminating evidence of a crime and that evidence was immediately apparent to the agents. See United States v. Wilson, 2008 WL 342397, at *2 (E. D. Mo. Feb. 5, 2008) (finding probable cause existed to seize a cellular phone found in defendant Wilson's car because the victim had advised the police defendant had taken sexually explicit pictures of her having oral sex with a male with his cell phone); United States v. Stuckey, 325 F. Supp. 2d 793, 809 (E. D. Mich. 2004) (concluding the incriminating nature of the cellular phones, jewelry, clothing, and documents seized by officers executing a search warrant in the Sweetwater apartment was immediately apparent because the officers knew defendant had been indicted with drug conspiracy and murder charges and the affidavit indicated the presence of marijuana in the apartment). Having found the plain view factors satisfied here, I conclude the agents lawfully seized the cellular phone in plain view. Consequently, the agents did not violate Watson's Fourth Amendment rights to be free from unreasonable searches and seizures.

## II.   CONCLUSION

For the reasons stated above and in my Recommendation (Doc. #101), I RECOMMEND Watson's Motion to Suppress (Doc. #76) and Supplemental Motions to Suppress (Doc. #93, #97) are DENIED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before March 12, 2008**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th Cir. 1982).  See Stein v. Reynolds Sec., Inc., 667 F.2d 33 (11th Cir. 1982).  See also Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 5th day of March, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE